Tomas A. Ortiz, SBN 188873
(tortiz@garrett-tully.com)
Jennifer R. Slater, SBN 216207
(jslater@garrett-tully.com)
GARRETT & TULLY, P.C.
225 S. Lake Avenue, Suite 1400
Pasadena, CA 91101-4869
Telephone: (626) 577-9500
Facsimile: (626) 577-0813

Attorneys for Creditor GMAC Mortgage, LLC

FILED
APR 05 2010
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: Deputy Clerk

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BY FAX

IN RE ROBBIE ODOM,

Debtor.

CASE NO. 2:09-bk-46750-ER

**EX PARTE APPLICATION OF CREDITOR GMAC MORTGAGE TO EXTEND THE APRIL 9, 2010 DEADLINE TO FILE A COMPLAINT OBJECTING TO DISCHARGEABILITY; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF JENNIFER SLATER AND JUAN ANTONIO AGUIRRE**

(Filed concurrently with [Proposed] Order)

**TO THE HONORABLE COURT AND ALL PARTIES:**

Creditor GMAC Mortgage LLC respectfully submits this *ex parte* application for an order extending the April 9, 2010 deadline to file a complaint objecting to dischargeability of debtor Robbie Odom's debt for six months to enable GMAC Mortgage to conduct 2004 examinations and gather the necessary documentation and evidence to support a complaint for non-dischargeability based on fraud.

Good cause for the six month continuance exists because creditor GMAC Mortgage is considering filing a complaint for non-dischargeability containing fraud

claims against the debtor based on admissions made by the debtor in the first two 341 creditors' meetings and the allegations in the pending state court lawsuit filed by creditor Billie Marie Iverson. During these creditor meetings, Mr. Odom disclosed for the first time that he had an agreement with Timothy Barnett to hold title to the subject property for one year and during that time period, Mr. Barnett would make the mortgage payments although Mr. Odom was the borrower for the loan secured by GMAC Mortgage's deed of trust.

Mr. Odom did not include the Property or GMAC Mortgage's loan on his initial Schedule A and D filed on or about December 29, 2009 and only recently amended his Schedule A and D to first include the Property and then GMAC Mortgage's $280,000 loan, which he disputes. GMAC Mortgage has been unable to conduct a 2004 examination of the debtor and gather the necessary documentation and evidence to make a determination as to whether a complaint for non-dischargeability based on fraud is appropriate. The requested six month extension would enable GMAC Mortgage to file an application requesting that the court issue an order permitting GMAC Mortgage to conduct a 2004 examination of the debtor and any other individuals who may have information and evidence relevant to GMAC Mortgage's loan, the purported fraudulent scheme and a claim of non-dischargeability.

This application will be based on this notice, the attached memorandum of points and authorities, the declarations of Jennifer R. Slater and Juan Antonio Aguirre, all exhibits hereto and all pleadings and documents contained in the court file.

DATED: April 5, 2010

GARRETT & TULLY, P.C.
Tomas A. Ortiz
Jennifer R. Slater

Jennifer R. Slater
Attorneys for Creditor GMAC Mortgage, LLC

GARRETT & TULLY
A PROFESSIONAL CORPORATION

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Prior to the commencement of debtor Robbie Odom's bankruptcy, creditor Billie Marie Iverson filed a lawsuit in Los Angeles Superior Court alleging that she is the victim of a foreclosure rescue scam orchestrated by Timothy Barnett and his associates, including debtor Robbie Odom. Mrs. Iverson claims that Mr. Barnett and Mr. Odom defrauded her of title to the real property commonly known as 1116 N. Chester Avenue in Compton, California ("Property") and thousands of dollars in equity. Mrs. Iverson has also alleged tort and equitable claims against various lenders who issued loans to Mr. Barnett and Mr. Odom in connection with their purchases of the Property. Creditor GMAC Mortgage, LLC ("GMAC") did not originate any of the subject loans but acquired its security interest in the first $280,000 deed of trust encumbering the Property after escrow closed and title transferred to Mr. Odom.

Mr. Odom filed his bankruptcy petition on December 29, 2009 yet failed to include the Property and GMAC's loan on his Schedules A and D. Mr. Odom subsequently amended the schedules to include both the Property and GMAC's loan. Mr. Odom indicated on his Amended Schedule D that he disputes GMAC's loan.

This court initially set the 341 creditors' meeting for February 8, 2010 and set an April 9, 2010 deadline for any creditor to file an objection to dischargeability. The creditors' meeting was continued to February 26, 2010 and then again to March 29, 2010. At the last two creditors' meetings, GMAC's counsel learned for the first time that Mr. Odom contends to have had an agreement with Mr. Barnett to hold title to the Property(along with 4 other properties) for one year and during that time period, Mr. Barnett would make the mortgage payments although Mr. Odom was the borrower for the loan secured by GMAC's deed of trust. Mr. Odom never disclosed this agreement to GMAC or identified Mr. Barnett as co-borrower during the application process.

GMAC has been unable to conduct a 2004 examination of Mr. Odom and gather the necessary documentation and evidence to make a determination as to whether a

GARRETT & TULLY
A PROFESSIONAL CORPORATION

50696.wpd
91539-036

complaint for non-dischargeability based on fraud is appropriate. The requested six month extension would enable GMAC to file an application requesting that the court issue an order permitting GMAC to conduct a 2004 examination of the debtor and any other individuals who may have information and evidence relevant to GMAC's loan, the purported fraudulent scheme and a claim of non-dischargeability.

## II. FACTUAL BACKGROUND

Creditor Billie Marie Iverson claims to have lived at the Property since she acquired title to the Property with her now deceased husband Raymond Iverson, in November of 1967. Mrs. Iverson and her husband obtained loans secured against the Property from Aaames Home Loans in the principal amount of $88,000 in October 1996 and from Wells Fargo Bank in the principal amount of $25,000 in December 1997.

Mrs. Iverson contends that Mr. Iverson passed away on August 19, 2002 and that she began to suffer financial problems in 2005. T.D. Service Company, on behalf of Wells Fargo, recorded a notice of default on September 14, 2005.

Mrs. Iverson contends that in September 2005, Timothy Barnett and his associates contacted Mrs. Iverson, unsolicited, and indicated they could assist her in saving the Property from foreclosure. Mrs. Iverson alleges that either the pertinent documents were forged or that she did not understand what she was signing. Mrs. Iverson admits that she did sign a grant deed to the Property in favor of Mr. Barnett but claims she never intended to convey title of the Property to Mr. Barnett.

On September 22, 2005, Mr. Barnett recorded a grant deed conveying title from Mrs. Iverson to Mr. Barnett and a $266,500 deed of trust in favor of Anchor Mortgage. Mr. Barnett subsequently deeded the Property to debtor Robbie Odom, who executed two deeds of trust in favor of Silver State for $280,000 and $100,000. GMAC later acquired the loan secured by the $280,000 deed of trust and Saxon Mortgage acquired the loan secured by the $100,000 deed of trust.

Mr. Odom defaulted on GMAC's loan and Executive Trustee Services, on behalf of GMAC, recorded a notice of default on August 21, 2007. Executive Trustee then

GARRETT & TULLY
A PROFESSIONAL CORPORATION

50696.wpd
91539-036

recorded a notice of trustee's sale on November 28, 2007. A rescission of the notice of default was recorded on March 25, 2008.

Mr. Odom then defaulted on GMAC's loan again and Executive Trustee recorded a notice of default on July 15, 2008. A rescission of the notice of default was recorded on December 7, 2009. On or about September 11, 2008, GMAC received its first communication from Mrs. Iverson's counsel advising that Mrs. Iverson claimed to be the victim of Mr. Barnett's purported fraudulent real estate scheme. GMAC agreed to postpone the foreclosure to allow Mrs. Iverson and her counsel to investigate.

On or about February 16, 2010, Mrs. Iverson filed her first amended complaint alleges claims for: (1) Fraud; (2) Violation of Civil Code section 1695; (3) Violation of Civil Code section 2945; (4) Violation of Business & Professions Code section 17200; (5) Violation of Welfare & Institutions Code section 15610.30; (6) Negligence; (7) Cancellation of Deeds; and (8) Quiet Title.

On December 29, 2009, Mr. Odom filed the instant Chapter 7 bankruptcy. Although Mr. Odom initially did not include the Property and GMAC's loan on his Schedules A and D, he has since amended his schedules to include both. However, he disputes GMAC's loan.

On March 26, 2010, the trustee filed a notice of intent to abandon the trustee's interest in the Property.

## III. THIS COURT HAS AUTHORITY TO GRANT AN EXTENSION OF TIME TO FILE A COMPLAINT FOR NON-DISCHARGEABILITY

Bankruptcy Rule 4007(c) provides in relevant part:

"On a motion of a party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be filed before the time has expired."

To determine "cause" for an extension, the court considers: (1) whether granting the delay will prejudice the debtor; and (2) the length of the delay and its impact on efficient court administration. Cal Prac. Guide Bankruptcy Ch. 22-H, p. 1504 (2009).

GARRETT & TULLY
A PROFESSIONAL CORPORATION

Good cause for the six month continuance exists because creditor GMAC is considering filing a complaint for non-dischargeability containing fraud claims against the debtor based on admissions made by the debtor in the first two 341 creditor's meetings and the allegations in the pending state court lawsuit filed by creditor Billie Marie Iverson. (Declaration of Jennifer Slater ("Slater Decl.") ¶ 7.) Specifically, Mr. Odom testified that he had an agreement with Timothy Barnett (whom Mrs. Iverson alleges is the "ringleader" of a purported fraudulent scheme) to hold title to the subject property (along with 4 other properties) for one year and during that time period, Mr. Barnett would make the mortgage payments although Mr. Odom was the borrower for the loan secured by GMAC's deed of trust. (Slater Decl., ¶ 8.) Up until Mr. Odom's recent testimony at the 341 creditors' meeting, GMAC was unaware of the agreement Mr. Odom contends to have had with Mr. Barnett with respect to the subject property and GMAC's loan. (Juan Antonio Aguirre Declaration, ¶ 10.)

Mr. Odom did not include the Property or GMAC's loan on his initial Schedules A and D filed on or about December 29, 2009. (Slater Decl., ¶ 5.) It was not until recently that Mr. Odom amended his Schedules A and D to first include the Property and then GMAC's $280,000 loan, which he disputes. (Slater Decl., ¶ 6.) GMAC has been unable to conduct a 2004 examination of the debtor and gather the necessary documentation and evidence to make a determination as to whether a complaint for non-dischargeability based on fraud is appropriate. (Slater Decl., ¶ 9.) The requested six month extension would enable GMAC to file an application requesting that the court issue an order permitting GMAC to conduct a 2004 examination of the debtor and any other individuals who may have information and evidence relevant to GMAC's loan, the purported fraudulent scheme and a claim of non-dischargeability. (Slater Decl., ¶ 9.)

Mr. Odom will not be prejudiced by the requested extension of time as this bankruptcy was filed within the last couple of months and Mr. Odom is represented by counsel.

Furthermore, the extension will enable the court to effectively administer this

bankruptcy proceeding as it will diminish the likelihood that GMAC will need to amend it complaint as GMAC intends to conduct the necessary discovery prior to filing a complaint for non-dischargeability.

## IV. CONCLUSION

As discussed above, there is good cause for a six month continuance of the deadline for GMAC to file a complaint for non-dischargeability because Mr. Odom recently disclosed for the first time that had an agreement with Timothy Barnett to hold title to the subject property for one year and during that time period, Mr. Barnett would make the mortgage payments although Mr. Odom was the borrower for the loan secured by GMAC's deed of trust.

Mr. Odom did not include the Property or GMAC's loan on his initial Schedules A and D filed on or about December 29, 2009 and only recently amended his Schedules A and D to first include the Property and then GMAC Mortgage's $280,000 loan, which he disputes. GMAC has been unable to conduct a 2004 examination of the debtor and gather the necessary documentation and evidence to make a determination as to whether a complaint for non-dischargeability based on fraud is appropriate. The requested six month extension would enable GMAC to file an application requesting that the court issue an order permitting GMAC to conduct a 2004 examination of the debtor and any other individuals who may have information and evidence relevant to GMAC's loan, the purported fraudulent scheme and a claim of non-dischargeability.

DATED: April 5, 2010

GARRETT & TULLY, P.C.
Tomas A. Ortiz
Jennifer R. Slater

Jennifer R. Slater
Attorneys for Creditor GMAC Mortgage, LLC

GARRETT & TULLY
A PROFESSIONAL CORPORATION

50696.wpd
91539-036

**DECLARATION OF JENNIFER SLATER**

I, Jennifer Slater, declare as follows:

1. I am an attorney licensed to practice in the State of California and before the United States District Court, Central District of California. I am an associate with Garrett & Tully, P.C., attorneys for creditor GMAC Mortgage, LLC. Unless otherwise indicated, the facts set forth herein are personally known by me to be true. If called as a witness, I could and would competently testify thereto under oath.

2. I submit this declaration in support of GMAC's *ex parte* application for an order extending the April 9, 2010 deadline to file an complaint for non-dischargeability by six months.

3. Debtor Robbie Odom is the borrower and trustor for GMAC's deed of trust, a true and correct copy of which is attached hereto as Exhibit A.

4. Creditor Billie Marie Iverson filed a complaint against GMAC alleging that Mr. Odom and Timothy Barnett (the alleged "ringleader") defrauded Mrs. Iverson by transferring title and encumbering the property without her consent. Her complaint seeks to set aside GMAC's deed of trust based on the purported fraud. A true and correct copy of plaintiff's first amended complaint is attached hereto as Exhibit B.

5. I am informed and believe that Mr. Odom did not include the Property or GMAC's loan on his initial bankruptcy petition and Schedule A and D, filed on or about December 29, 2009. I first learned of Mr. Odom's bankruptcy filing on January 5, 2010 from Mrs. Iverson's counsel.

6. I am informed and believe that Mr. Odom amended his Schedules A and D on at least three separate occasions to include the subject property and GMAC Mortgage's $280,000 loan.

7. My client GMAC Mortgage is considering filing a complaint for non-dischargeability alleging a fraud claim against debtor Robbie Odom based on admissions he made during the three 341 creditors' meetings and the allegations in the pending state court lawsuit filed by creditor Billie Marie Iverson.

GARRETT & TULLY
A PROFESSIONAL CORPORATION

50696.wpd
91539-036

8. I attended all three 341 creditors' meetings on February 8, February 26 and March 29, 2010. At the last two creditors' meeting, Mr Odom testified that he had an agreement with Mr. Barnett to hold title to the subject property (along with 4 other properties) for one year and during that time period, Mr. Barnett would give Mr. Odom the money to pay GMAC's mortgage. Mr. Odom also testified he made the mortgage payments from his own bank account after receiving the money from Mr. Barnett.

9. GMAC has been unable to conduct a 2004 examination of the debtor and gather the necessary documentation and evidence to make a determination as to whether a complaint for non-dischargeability based on fraud is appropriate. The requested six month extension would enable GMAC to file an application requesting that the court issue an order permitting GMAC to conduct a 2004 examination of the debtor and any other individuals who may have information and evidence relevant to GMAC's loan and a claim of non-dischargeability.

10. In July 2009, my client provided me with a copy of the assignment of the $280,000 loan transferring the beneficial interest in the $280,000 from MERS (a nominee beneficiary) to GMAC. A true and correct copy of the assignment my client provided to me is attached hereto as Exhibit C.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 5th day of April 2010 at Pasadena, California.

Jennifer Slater

JENNIFER SLATER

## DECLARATION OF JUAN ANTONIO AGUIRRE

I, Juan Antonio Aguirre, declare as follows:

1. I am at least eighteen years of age and a Senior Litigation Analysis for creditor GMAC Mortgage, LLC. Unless otherwise indicated, the facts set forth herein are personally known by me to be true. If called as a witness, I could and would competently testify thereto under oath.

2. I submit this declaration in support of GMAC's *ex parte* application for an order extending the April 9, 2010 deadline to file an complaint for non-dischargeability by six months.

3. I am authorized to authenticate documents created, received and maintained by GMAC in the ordinary course of business, including but not limited to all documents related to the loans GMAC services.

4. I am informed and believe that debtor Robbie Odom is the borrower and trustor for GMAC's deed of trust, a true and correct copy of which is attached hereto as Exhibit A. GMAC began servicing the loan secured by Exhibit A in June 2006.

5. GMAC first learned of learned of Robbie Odom's bankruptcy filing from its litigation counsel on January 5, 2010.

6. I am informed and believe that Mr. Odom contends that he had an agreement with Timothy Barnett to hold title to the subject property for one year and during that time period, Mr. Barnett would make the mortgage payments although Mr. Odom was the borrower for the loan secured by GMAC's deed of trust.

7. I am informed and believe that Mr. Odom did not identify Mr. Barnett as a co-borrower when applying for the $280,000 loan secured by Exhibit A or otherwise notify GMAC's predecessor of this agreement.

8. I am informed and believe that all payments Mr. Odom made on the loan secured by Exhibit A came from Mr. Odom personally.

9. Up until Mr. Odom's recent testimony at the 341 creditors' meeting, GMAC was unaware of the agreement Mr. Odom contends to have had with Mr. Barnett with

respect to the subject property and GMAC's loan.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 5th day of April 2010 at Dallas, Texas.

JUAN ANTONIO AGUIRRE

GARRETT & TULLY
A PROFESSIONAL CORPORATION

# EXHIBIT A

Leora D. Freedman (SBN 132896)
Patrick Dunlevy (SBN 162722)
Banafsheh Amirzadeh (SBN 257551)
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Tel: (213) 385-2977
Fax: (213) 385-9089

Attorneys for Plaintiff
Billie Marie Iverson

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

BILLIE MARIE IVERSON,

Plaintiff,

v.

ROBBIE ODOM, an individual; TIMOTHY BARNETT, an individual; ANDREA HARDY, an individual; ANGEL A. CERVANTES, an individual; TRUSPERITY ACQUISITION CORPORATION, a California corporation; TRUSPERITY CORPORATION, a California corporation; GMAC MORTGAGE, LLC, a Delaware limited liability company; SAXON MORTGAGE SERVICES, INC., a Texas corporation; ANCHOR MORTGAGE, a California corporation; SILVER STATE FINANCIAL SERVICES, INC., a Nevada corporation; TRILOGY ESCROW, INC., a California corporation; FIDELITY NATIONAL TITLE COMPANY, a California corporation; EXECUTIVE TRUSTEE SERVICES, LLC, a Delaware limited liability company; all persons unknown claiming any legal or equitable estate, interest, lien, right, title in the property described in the complaint adverse to Plaintiff's title or any cloud on Plaintiff's title to the property; and DOES 1-25 inclusive,

Defendants.

Case No. BC412377

**FIRST AMENDED VERIFIED COMPLAINT FOR:**

1) **Fraud;**
2) **Violation of Civ. Code § 1695 et seq.;**
3) **Violation of Civ. Code § 2945 et seq.;**
4) **Violation of Bus. & Prof. § 17200;**
5) **Violation of Welf. & Inst. Code § 15610.30;**
6) **Negligence:**
7) **Cancellation of Deeds; and**
8) **Quiet Title**

**JURY TRIAL DEMANDED**

Ex. A, pg. 12

## INTRODUCTION

Plaintiff, Billie Marie Iverson ("Mrs. Iverson" or "Plaintiff"), alleges as follows:

1. Plaintiff Billie Marie Iverson, an elderly and unsophisticated property owner who has resided in her home since 1967, is the victim of a foreclosure rescue scam in which a notorious convicted felon, Timothy Barnett, and his associate, Robbie Odom, fraudulently acquired title to her home. Barnett, Odom, and their colleagues then stripped the home of hundreds of thousands of dollars of equity by securing mortgage loans from lenders, who despite clear indications of fraud, allowed the equity in Mrs. Iverson's home to be liquidated for the benefit of themselves and their co-defendants.

2. Upon information and belief, the Real Estate Fraud Unit of the Los Angeles County District Attorney's Office is actively investigating Timothy Barnett and certain defendants in connection with this and other similar fraudulent schemes.

## THE SUBJECT PROPERTY

3. The real property that is the subject of this action ("Property") is located at 1116 N. Chester Ave., Compton, California 90221, and is legally described as:

> LOT 137, OF TRACT 8856, IN THE CITY OF COMPTON, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 121, PAGE(S) 1 AND 2 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

4. From 1967 through 2002, Mrs. Iverson held the Property in joint tenancy with her late husband, Raymond D. Iverson. After Mr. Iverson passed away, Mrs. Iverson held the Property in fee simple absolute. Mrs. Iverson is informed and believes that prior to the fraudulent transfer in September 2005, the Property was subject to a first mortgage valued at approximately $80,000 and a second mortgage valued at approximately $19,000.

## JURISDICTION AND VENUE

5. Venue is proper in the County of Los Angeles under Code of Civil Procedure section 392(a)(1) and 395, as this action is for the determination of an interest in real property in Los Angeles County.

## THE PARTIES

6. Plaintiff Billie Marie Iverson is a seventy-one-year-old individual who resides in Los Angeles County, California.

7. Timothy Barnett ("Barnett") is an individual who, at all relevant times, conducted business in Los Angeles County, California. Barnett is, or was at all relevant times, an agent of Trusperity Corporation, Trusperity Acquisition Corporation, and Buyers Market Realty Services Corp. ("BMRS"), and serves, or served, as a Director of Trusperity Corporation and BMRS. Plaintiff is informed and believes that Barnett controlled Trusperity Corporation, Trusperity Acquisition Corporation, and BMRS and that he characterizes, or characterized, himself as the "Visionary" of one or more of these companies.

8. Kimberly Barnett is an individual who conducted business in Los Angeles County, California. Plaintiff is informed and believes that Kimberly Barnett is Barnett's wife and is, or was at all relevant times, the Chief Financial Officer, Chief Executive Officer, and Secretary of Trusperity Acquisition Corporation and Trusperity Corporation. She also serves, or served at all relevant times, as the Chief Executive Officer and Chief Financial Officer of BMRS, and as a Director of Trusperity Corporation, Trusperity Acquisition Corporation, and BMRS. On or about July 30, 2008, Timothy and Kimberly Barnett filed a bankruptcy petition under Chapter 11 of the United States Bankruptcy Code, which resulted in an automatic stay under 11 U.S.C. § 362(a) and prevented Mrs. Iverson from pursuing her civil claims against Kimberly Barnett in this action. Mrs. Iverson was granted relief from the automatic stay under 11 U.S.C. § 362(d) on July 21, 2009 as to Barnett; her motion for relief from the automatic stay as to Mrs. Barnett was filed on January 19, 2010, and is calendared for hearing on February 16, 2010.[1]

9. Defendant Trusperity Acquisition Corporation (License No. C2683062) is a California corporation that, on information and belief and at all relevant times, conducted business in Los Angeles County, California, and whose principal place of business was 6131 Orangethorpe

[1] If the bankruptcy court grants Mrs. Iverson's motion, she presently intends to seek to amend this complaint to include Kimberly Barnett as a defendant.

Ex. A, pg. 17

Avenue, 5th Floor, Buena Park, CA 90620. The California Secretary of State has suspended Trusperity Acquisition Corporation's corporate status.

10. Defendant Trusperity Corporation (License No. C2654397) is a California corporation that, on information and belief and at all relevant times, conducted business in Los Angeles County, California, and whose principal place of business was 6131 Orangethorpe Avenue, 5th Floor, Buena Park, CA 90620. The California Secretary of State has suspended Trusperity Corporation's corporate status.

11. Defendant Robbie Odom ("Odom") is an individual who, on information and belief and at all relevant times, conducted business in Los Angeles County, California, and is a licensed real estate agent with the California Department of Real Estate (License No. 01411108). Plaintiff is informed and believes that Odom was at all relevant times Assistant Vice President and Broker of Trusperity Acquisition Corporation.

12. Defendant Andrea Hardy ("Hardy") is an individual who, on information and belief and at all relevant times, resides in and conducted business in Los Angeles County, California. Plaintiff is informed and believes that Hardy was at all relevant times a notary (Commission No. 1464211), an officer of Trusperity Corporation, and an employee of BMRS and Trusperity Acquisition Corporation. Plaintiff is also informed and believes that Hardy frequently notarized documents at Barnett's direction to further the fraudulent purposes of Trusperity Corporation, Trusperity Acquisition Corporation, and BMRS.

13. Plaintiff is informed and believes that Defendant Angel A. Cervantes ("Cervantes") is an individual who, at all relevant times, was a notary (Commission No. 1458625); conducted business in Los Angeles County, California; is, or was, a licensed real estate agent with the California Department of Real Estate; and was at all relevant times an employee of BMRS and Trusperity Acquisition Corporation who frequently notarized documents at Barnett's direction to further the fraudulent purposes of BMRS and Trusperity Acquisition Corporation.

14. Plaintiff is informed and believes that Defendant GMAC Mortgage, LLC ("GMAC Mortgage") (License No. 200613210204) is a Delaware limited liability company that conducts business in Los Angeles County, California.

Ex. A pg. 15

15. Plaintiff is informed and believes that Defendant Saxon Mortgage Services, Inc. ("Saxon Mortgage") (License No. C1917894) is a Texas corporation that conducts business in Los Angeles County, California.

16. Plaintiff is informed and believes that Defendant Trilogy Escrow, Inc. ("Trilogy Escrow") (License No. C2573644) is a California corporation that, at all relevant times, conducted business in Los Angeles County, California.

17. Plaintiff is informed and believes that Defendant Anchor Mortgage is a corporation licensed with the California Department of Real Estate (License No. 01257457) that conducts business in Los Angeles County, California, and does business as Anchor Loans, Inc. Plaintiff is further informed and believes that Anchor Loans, Inc. is a California corporation (License No. C2106273) that conducts business in Los Angeles County, California.

18. Plaintiff is informed and believes that Defendant Silver State Financial Services, Inc. ("Silver State") (License No. C2016112) is, or was, a Nevada corporation that does, or did, business as Silver State Mortgage and conducted business in Los Angeles County, California.

19. Plaintiff is informed and believes that defendant Fidelity National Title Company ("Fidelity National") (License No. C0797285) is a California corporation that conducts business in Los Angeles County, California.

20. Plaintiff is informed and believes that Defendant Executive Trustee Services, LLC ("Executive Trustee Services") (License/File No. 4150058) is a Delaware limited liability company with its principal place of business at 2255 North Ontario Street, Suite 400, Burbank, California 91504-3120. Plaintiff is informed and believed that Executive Trustee Services is *not* registered as a limited liability company with the California Secretary of State.

21. Plaintiff is unaware of the true names and capacities of Defendants Does 1 through 25, inclusive (the "Doe Defendants"), and therefore sues these defendants by such fictitious names. Mrs. Iverson is informed and believes that at all relevant times, each of the fictitiously named defendants was an agent, employee, co-conspirator or alter ego of one or more of the named defendants, and acted within the course and scope of said agency, employment, co-conspirator or alter-ego relationship. Mrs. Iverson is further informed and believes that each of the fictitiously

Ex. A, pg. 16

named defendants aided and assisted the defendants herein in committing the wrongful acts alleged in this complaint, and that each of the fictitiously named defendants proximately caused the damages alleged herein. Mrs. Iverson will amend this complaint to allege the true names and capacities of the Doe Defendants when they have been ascertained.

22. Plaintiff is informed and believes that that at all times mentioned in this complaint, Barnett, Kimberly Barnett, Odom, Hardy, Cervantes, Trusperity Acquisition Corporation, Trusperity Corporation, BMRS and the Doe Defendants, were acting as the agents, principals, partners, joint venturers, co-conspirators, employees, servants, and/or authorized representatives of each other, and that each acted within the course, scope and authority of such relationship. Plaintiff is further informed and believes that each defendant was acting in concert with his/her/its codefendants and that each defendant was dominated and controlled completely by the other codefendants.

23. Plaintiff is informed and believes that Barnett, Kimberly Barnett, Odom, Hardy, Cervantes, Trusperity Acquisition Corporation, Trusperity Corporation, and the Doe Defendants conspired and agreed among themselves to act or fail to act in the manner complained of in this complaint and were, by engaging in such conduct, acting pursuant to and in furtherance of this conspiracy. Each of these defendants is jointly and severally responsible and liable to her for the damages alleged.

24. Plaintiff is informed and believes that Trusperity Acquisition Corporation, Trusperity Corporation, and Does 1 through 5 are sham corporations and that a unity of interest exists between each of them and Barnett, Kimberly Barnett, Odom, Cervantes, Hardy, and Does 6 through 15. Plaintiff is further informed and believes that Trusperity Acquisition Corporation, Trusperity Corporation, Barnett, Kimberly Barnett, Odom, Hardy, Cervantes and the Doe Defendants are alter-egos of each other. Plaintiff therefore alleges that all acts, conduct, or omissions alleged below by any one of these defendants are acts, conduct, or omissions of the others. Recognizing Trusperity Acquisition Corporation, Trusperity Corporation, and Does 1 through 5 as corporate entities separate from their alter egos would sanction fraud and promote injustice.

25. Plaintiff is unaware of the true names and capacities of the defendants sued as "all

persons unknown claiming any legal or equitable estate, interest, lien, right or title in the property described in the complaint adverse to plaintiff's title or any cloud on plaintiff's title to the property" (the "Unknown Defendants"). The Unknown Defendants claim some estate, interest, lien, or right in the real property described in this complaint that is adverse to Mrs. Iverson's title; each claim constitutes a cloud on Mrs. Iverson's title to the Property.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

26. Plaintiff Billie Marie Iverson is the owner in fact of real property located at 1116 N. Chester Ave., Compton, California 90221 and has lived there continuously for over forty years. Mrs. Iverson purchased the Property with her late husband Raymond D. Iverson in 1967. The couple raised their ten children (including five foster children) at the Property and lived together there until Mr. Iverson's death in August 2002. Although Mr. and Mrs. Iverson owned the Property in joint tenancy, Mr. Iverson handled all real estate and financial matters for the family. Since 1967, Mrs. Iverson and her family have had exclusive possession of the Property. Mrs. Iverson and four of her foster children (Dennis, Roshanda, Roanna, and Robert) presently reside at the Property.

27. In the wake of her husband's death from cancer in 2002, Mrs. Iverson experienced financial difficulties. In September 2005, a Notice of Default in the amount of $2,283.31 was recorded on Mrs. Iverson's home.

28. At the time, Mrs. Iverson owed only approximately $80,000 on a first mortgage issued by Aames Home Loan and approximately $19,000 on a second mortgage issued by Wells Fargo Bank. Plaintiff is informed and believes that the Property was worth more than $350,000 in September 2005.

29. On or about September 15, 2005, a man identifying himself as Carlos Barnett came to Mrs. Iverson's home unannounced. During this unsolicited visit, Carlos Barnett told Mrs. Iverson that he knew her house was in foreclosure. Carlos also told her that his brother, Timothy Barnett ("Barnett"), was a businessman who could help save her home. A short while later, Carlos Barnett's purported brother, Barnett, appeared at Mrs. Iverson's home.

30. When Barnett arrived at the Property, he represented himself as an experienced real estate professional with a business license and many years of expertise. Barnett further represented

Ex. A, pg. 18

that his companies, Trusperity Acquisition Corporation and/or Trusperity Corporation, helped individuals with real estate problems, including foreclosures.

31. During this conversation, Mrs. Iverson informed Barnett that she planned to seek a "reverse mortgage" on her home. Barnett strongly discouraged Mrs. Iverson from doing so. He said that his "program" was a better option because it would allow Mrs. Iverson to resolve her financial problems *and* keep her home. Barnett explained to Mrs. Iverson that the "program" was similar to but "better" than a reverse mortgage. Barnett told Mrs. Iverson that he would pay off her existing mortgages, and that she no longer would have to worry about mortgage payments. Barnett also told Mrs. Iverson that his "program" did not necessitate her transferring title to the Property and that her name would remain on title at all times. Mrs. Iverson believed Barnett's program to be equivalent to a reverse mortgage.

32. During this meeting, Barnett prayed with Mrs. Iverson and represented himself as a man of God, thereby gaining Mrs. Iverson's trust by appealing to her Christian beliefs. Barnett also appealed to Mrs. Iverson as a fellow African-American, claiming that he wanted to help his community. Barnett repeatedly assured Mrs. Iverson that he would take good care of her and that he was there to help her, not to take her home.

33. Relying on Barnett's representations, Mrs. Iverson gave Barnett a check for approximately $1,000. She paid him the money because she believed she was enrolling in a program with Trusperity Acquisition Corporation and/or Trusperity Corporation that would enable her to save her family home. At Barnett's request, Mrs. Iverson produced her late husband's death certificate and information relating to the Property's ownership and existing mortgages. At Barnett's request, Mrs. Iverson also signed a series of documents, believing that the documents were necessary for her enrollment in Barnett's "program." Before leaving, Barnett told Mrs. Iverson a man would come to her home with additional documents to sign.

34. On or about September 15, 2005, Defendant Angel A. Cervantes came to the Property and introduced himself to Mrs. Iverson as Barnett's employee. Cervantes instructed Mrs. Iverson to sign a series of documents, but did not explain or describe the documents to her. Remembering and relying on Barnett's earlier representation that the documents were a necessary

Ex. A, pg. 19

prerequisite for enrollment in his "program," Mrs. Iverson signed the documents that Cervantes presented. She did not receive a copy of all the documents and does not know all the documents she signed or the nature of all the documents. This entire meeting lasted no longer than thirty minutes.

35. Mrs. Iverson later learned that a number of documents bear either her unintended or her forged signature, including an "Equity Purchase Agreement" that purported to sell (subject to the existing mortgages of approximately $100,000) the Property to Barnett for $5,000 in cash, a sum significantly below its market price at that time. Had she been aware that one of the documents that Barnett or Cervantes presented her was this Equity Purchase Agreement, Mrs. Iverson would not have signed it.

36. Mrs. Iverson also later discovered a grant deed bearing her either her unintended or forged signature, although she never had any intention of selling her home or transferring title to her home. At the time Mrs. Iverson purportedly signed any documents, Mrs. Iverson believed, based on Barnett's representations, that she was only signing documents for the purpose of enrolling in his "program." Barnett repeatedly assured Mrs. Iverson that her name would remain on title to the Property at all times; in reality, Barnett and his accomplices intended to take title to the Property and strip hundreds of thousands of dollars of equity from it.

37. Despite Barnett's representations that Mrs. Iverson would at all times retain title to her home, Plaintiff is informed and believes that on or about September 22, 2005, Defendant Fidelity National requested that a grant deed purportedly transferring title to the Property from Mrs. Iverson to Barnett ("Barnett Grant Deed") be recorded with the Los Angeles County Recorder. A true and correct copy of the Barnett Grant Deed (L.A. County Recorder Document No. 05-2284613) is attached as Exhibit A. Although the Barnett Grant Deed is dated September 16, 2005, it appears to have been executed on September 21, 2005.

38. Plaintiff is informed and believes that Cervantes notarized the Barnett Grant Deed in furtherance of the fraud against Mrs. Iverson and with knowledge that the purported transfer was fraudulent. Plaintiff is further informed and believes that: (a) Cervantes has notarized numerous documents for Barnett, Trusperity Acquisition Corporation, BMRS, and/or Trusperity Corporation

in connection with other similar fraudulent schemes, (b) Cervantes has shared in the profits of these fraudulent schemes, and (c) that prior to his employment by Barnett and Barnett's companies, Cervantes was aware that Barnett previously had been incarcerated.

39. Plaintiff is informed and believes that on or about the same day that the Barnett Grant Deed was recorded, Anchor Mortgage requested that a Deed of Trust and Assignment of Rents, executed on September 21, 2005 by Barnett in favor of Anchor Mortgage in the amount of $266,500 ("Anchor Deed of Trust"), be recorded against the Property. A true and correct copy of the Anchor Deed of Trust (L.A. County Recorder Document No. 05-2284614) is attached as Exhibit B.

40. Unbeknownst to Mrs. Iverson, Barnett orchestrated the fraudulent sale of the Property to himself for $250,000. Anchor Mortgage, Trilogy Escrow, and Fidelity National participated, or otherwise assisted, in perpetrating this fraud.

41. Barnett, on information and belief, contacted Anchor Mortgage to obtain funding for his "purchase" of the Property on or about September 19, 2005. Only two days later, on or about September 21, 2005, he obtained $266,500 in funding from Anchor Mortgage, as evidenced by the Anchor Deed of Trust.

42. Plaintiff is informed and believes that Defendant Anchor Mortgage caused the Anchor Deed of Trust to be recorded and encumbered the Property in the amount of $266,500, despite its knowledge that Barnett had a criminal history involving real estate fraud.

43. Barnett's criminal history includes, without limitation, his 1997 conviction on five felony counts of residential burglary, two counts of grand theft, and two counts of mortgage fraud for defrauding more than twenty individuals, many of them elderly African-Americans living in the South Central community of Los Angeles. In a similar scheme in 1994, Barnett, on information and belief, was charged with eight counts of grand theft, two counts of securities fraud, two counts of failure to register securities, two violations of the Foreclosure Consultant Act, one violation of the Home Equity Fraud Act and one count of issuing a check without sufficient funds. Plaintiff is informed and believes that Barnett pled no contest to many of these charges and that his criminal exploits were widely reported in the press.

44. Defendant Anchor Mortgage caused the Anchor Deed of Trust to be recorded, and encumbered the Property in the amount of $266,500, despite the fact that Mrs. Iverson was living at, and in possession of, the Property at all relevant times. Indeed, Mrs. Iverson has lived at the Property continuously and without interruption since 1967. Plaintiff is informed and believes that at no time prior to releasing the $266,500 to escrow did Anchor Mortgage inquire as to, or investigate, Mrs. Iverson's rights or interests in the Property, despite her exclusive, open, and notorious possession of the Property.

45. Defendant Anchor Mortgage caused the Anchor Deed of Trust to be recorded and encumbered the Property in the amount of $266,500, despite the fact that the Property was purportedly being "sold" to Barnett at a price significantly below its market value.

46. Plaintiff is informed and believes that at all relevant times Anchor Mortgage knew or should have known that Barnett had no interest or right to the Property, and that Mrs. Iverson had never consented to the "sale" or encumbering of her home. Plaintiff is further informed and believes that at all relevant times Anchor Mortgage knew or should have known of Barnett's criminal history.

47. Plaintiff is informed and believes that Anchor Mortgage received fees, interest, commission, compensation, and/or other profits in connection with the Anchor Deed of Trust.

48. Plaintiff is informed and believes that Anchor Mortgage gave loans to Barnett and his corporations to "purchase" or otherwise finance numerous properties in Los Angeles County and that Barnett obtained title to many of these properties through fraud. Plaintiff is informed and believes that Anchor Mortgage received fees, interest, commission, compensation, and/or other profits in connection with these loans.

49. Plaintiff is informed and believes that Fidelity National and Trilogy Escrow provided escrow services in connection with the fraudulent sale of the Property to Barnett and that they were the agents of Barnett and his companies.

50. Plaintiff is informed and believes that Fidelity National disbursed the net proceeds of the "sale"—approximately $146,000—to Trilogy Escrow, which, in turn, disbursed approximately $138,000 to *Barnett*, the purported "Buyer" of the Property. Plaintiff is informed and believes that

Fidelity National reviewed and ratified Trilogy Escrow's disbursement of sales proceeds to Barnett.

51. Fidelity National, on information and belief, engaged in numerous transactions as an escrow and title insurer with Barnett and his corporations. Because Barnett was involved in the transaction involving the sale of the Property, Plaintiff is informed and believes that Fidelity National should have refused to disburse the proceeds of this "sale" to Trilogy Escrow. Plaintiff is further informed and believes that Fidelity National knew or should have known: (a) of Barnett's criminal history; (b) that the "sale" to Barnett was a sham; (c) that Mrs. Iverson remained the rightful owner of the Property; and (d) that the disbursement of over $138,000 of the "sale" proceeds to the "Buyer" should have halted the transaction.

52. Trilogy Escrow and Fidelity National, on information or belief, knew or should have known that Barnett as the "Buyer" of the Property had no right to the proceeds of the "sale." Plaintiff alleges on information and belief that Trilogy Escrow and Fidelity National also knew or should have known that a handwritten note purportedly signed by Mrs. Iverson that "authoriz[ed] Trilogy Escrow, Inc. to disburst [sic] all seller proceeds to Timothy Barnett with the exception of $6,000 dollars" was highly suspect and suggestive of fraud.

53. Plaintiff is informed and believes that neither Trilogy Escrow nor Fidelity National ever investigated or inquired into the handwritten instructions purportedly authorizing Trilogy to disburse proceeds of the sale to Barnett.

54. Plaintiff is informed and believes that Trilogy Escrow provided escrow services to Barnett and/or his corporations on numerous occasions.

55. Plaintiff is informed and believes that Fidelity National and Trilogy Escrow received fees, interest, commission, compensation, and/or other profits in connection with the "sale" of the Property.

56. On or about September 23, 2005, Fidelity National requested that an interspousal transfer grant deed (L.A. County Recorder No. 05-2297414) be recorded, by which Kimberly Barnett transferred her interest in the Property to her husband, Barnett.

57. Fidelity National requested that the interspousal transfer grant deed, which was executed on September 19, 2005, be recorded, despite the fact that it knew or should have known

that Kimberly Barnett had no interest in the Property at the time she executed the deed. Indeed, the Barnett Grant Deed purportedly transferring title from Mrs. Iverson to Barnett was not executed until September 21, 2005.

58. On or about September 26, 2005, Mrs. Iverson received a check in the amount of $6,000 from Trilogy Escrow. She believed that this check represented a payment of living expenses from Barnett, Trusperity Acquisition Corporation, and/or Trusperity Corporation in connection with her enrollment in the "program." Mrs. Iverson received no other proceeds from the purported "sale" of the Property, even though if the sale had been legitimate she should have received proceeds in excess of $145,000.

59. Plaintiff is informed and believes that in or about October 2005, Anchor Mortgage sold or assigned the Note secured by the Anchor Deed of Trust to Access Investments, LLC ("Access Investments"), an investment fund that is controlled by and/or affiliated with Anchor Mortgage. Anchor Mortgage and Access Investments, on information and belief, received fees, interest, commission, compensation, and/or other profits in connection with this transaction.

60. On or about October 5, 2005, Mrs. Iverson received a letter, notifying her of her membership in Trusperity Corporation. The letter, which was from Mrs. Iverson's "Personal Account Executive," Judy Hernandez, identified Mrs. Iverson's membership number and purported member services, which included expert referral services, discounts on automobiles and entertainment, and an online shopping network.

61. Plaintiff is informed and believes that in or about January 2006, Barnett structured a sham sale of the Property to his associate, Defendant Robbie Odom, for $400,000.

62. On March 10, 2006, a grant deed ("Odom Grant Deed") was recorded with the Los Angeles County Recorder transferring Barnett's purported interest in the Property to Odom. A true and correct copy of the Odom Grant Deed (L.A. County Recorder Document No. 06-0517065) is attached as Exhibit C.

63. Plaintiff is informed and believes that Defendant Andrea Hardy notarized the Odom Grant in furtherance of the fraud against Mrs. Iverson and with knowledge the purported transfer was fraudulent. Plaintiff is informed and believes that Hardy has, over the course of the years,

Ex. A, pg. 24

notarized numerous documents for Barnett, Trusperity Acquisition Corporation, Trusperity Corporation, and/or the Doe Defendants in connection with similar fraudulent schemes, and that she has shared in the profits of these fraudulent schemes. Plaintiff is informed and believes that Hardy also acted as a "straw buyer" in one or more of these schemes.

64. Documents recorded with the Los Angeles County Recorder reflect that Odom financed his "purchase" of the Property with two loans from Silver State executed on March 1, 2006 in the amounts of $280,000 and $100,000, respectively. Purported Deeds of Trust securing these loans in the amount of $280,000 (L.A. County Recorder Document No. 06-0517066) and $100,000 (L.A. County Recorder Document No. 06-0517067) and in favor of Silver State (the "Silver State Deeds of Trust") were recorded on March 10, 2006. Defendant Fidelity National was named as Trustee under the Silver State Deeds of Trust. True and correct copies of the Silver State Deeds of Trust are attached as Exhibit D and Exhibit E.

65. Mrs. Iverson is informed and believes that, as a direct and proximate result of these transactions, monies were dispersed to Barnett, Kimberly Barnett, Odom, Hardy, Cervantes, Trusperity Acquisition Corporation, Trusperity Corporation, Anchor Mortgage, and/or the Doe Defendants.

66. Plaintiff is informed and believes that Silver State caused the Silver State Deeds of Trust to be recorded and encumbered the Property in the amount of $380,000 despite numerous red flags, including, without limitation: (a) Barnett's criminal history of defrauding homeowners, a history that should have been known to the lending community; (b) the surprisingly low (and below market) "sales" price of the Property to Barnett; and (c) Mrs. Iverson's open, notorious and continuous possession of, the Property at all relevant times. Plaintiff is informed and believes that at no time prior to the release of the $380,000 secured by the Silver State Deeds of Trust did Silver State inquire about or undertake any investigation of her occupancy of the Property or the nature of the possessory rights asserted thereby.

67. Silver State, on information and belief, knew or should have known at all relevant times that Mrs. Iverson was the rightful owner of the Property and that neither Barnett nor Odom had or could reasonably have lawful title to the Property.

68. Plaintiff is informed and believes that Fidelity National provided escrow services in connection with the "sale" of the Property from Barnett to Odom. Fidelity National, on information and belief, knew or should have known that Barnett did not have lawful title to the Property and that Mrs. Iverson was the rightful owner.

69. Plaintiff is informed and believes that Defendants Silver State, Anchor Mortgage, and Fidelity National received fees, commission, compensation, and/or other profits in connection with the Silver State Deeds of Trust.

70. Plaintiff is informed and believes that between March 8, 2006 and March 10, 2006, at least four other grant deeds (L.A. County Recorder Document No. 06-0493948, No. 06-0517115, No. 06-0517057, and No. 06-0517061) were recorded with the Los Angeles County Recorder of Deeds purporting to transfer title to other properties from Barnett to Odom. Two of these properties, like the Property itself, were located in Compton, California. Plaintiff is informed and believes that Anchor Mortgage funded Barnett's purchase of three of these properties and that Defendant GMAC Mortgage acquired an interest in one or more of these properties, after Barnett deeded them to Odom.

71. Plaintiff is informed and believes that on or about March 1, 2006, Silver State also caused a deed of trust to be executed in the amount of $112,500 for one of the four properties (specifically 2006 W. 82nd Street, Los Angeles, California 90047-2618) after Barnett deeded that property to Odom. In short, plaintiff is informed and believes that Barnett, Odom, Trusperity Acquisition Corporation, Cervantes, Hardy, Anchor Mortgage, GMAC Mortgage and Silver State regularly did business together and that the lenders knew or reasonably should have known that Barnett and his associates did not have legitimate title to the Property.

72. During 2006 and 2007, Barnett would stop by the Property to pick up mail. On these occasions, he also would pray with Mrs. Iverson.

73. In or around December 2006, Mrs. Iverson began to receive mail at the Property in the name of Robbie Odom. When she called Barnett to inquire why she was receiving mail in Odom's name, Barnett told her that Odom was his business partner and that she should not be concerned about the mail.

Ex. A pg. 26

74. On August 21, 2007, a Substitution of Trustee was recorded as L.A. County Recorder Document No. 20071954679, substituting Executive Trustee Services as Trustee under the deed of trust recorded on March 10, 2006 as L.A. County Recorder Document No. 06 0517066, the Silver State Deed of Trust for $280,000.

75. Sometime in 2007, Mrs. Iverson received a notice of default in Odom's name regarding the Property. She immediately called Barnett, who reiterated that Odom was his associate and that she need not be concerned. Barnett told Mrs. Iverson that she reminded him of his own mother and assured her that he would not let anything happen to her or her home.

76. Nevertheless, because she was becoming increasingly worried about her family home, Mrs. Iverson contacted Odom. Odom told her that he worked with Barnett and that she should contact Barnett.

77. By late 2007, Mrs. Iverson's foster son, Dennis, had become suspicious of Barnett. Dennis researched Barnett on the Internet and discovered an article about Barnett's involvement in real estate fraud over the previous decade. After Dennis and Mrs. Iverson read the article, Mrs. Iverson called Barnett. Barnett told Mrs. Iverson that those problems were "all over with," that he had "come clean," and that he was now a man of God.

78. On or about January 23, 2008, Barnett requested a meeting at the Property with Mrs. Iverson. That day, Barnett and his father-in-law, David Myles, came to the Property with some documents.

79. During this meeting, Barnett requested for the first time that Mrs. Iverson pay $2,300 a month in rent. Mrs. Iverson would not agree to pay this amount and refused to sign any documents.

80. In early 2008, Mrs. Iverson called the District Attorney to inquire and complain about Barnett and Odom. She was encouraged to seek private counsel.

81. On March 25, 2008, a "Notice of Rescession [*sic*] of Notice of Default" (L.A. County Recorder Document No. 20080508117) was recorded against the Property.

82. On July 15, 2008, a Notice of Default and Election to Sell Under Deed of Trust (L.A. County Recorder Document No. 20081252036) was recorded against the Property.

Ex. A, pg. 27

83. On June 16, 2009, an Assignment of Deed of Trust was executed, transferring Silver State's interest in the Property under the Silver State Deed of Trust identified as Document No. 06-0517066 to GMAC Mortgage.

84. Plaintiff is informed and believes that Silver State, on information and belief, transferred, assigned, and/or sold its interests in the Property, and GMAC Mortgage and Saxon Mortgage and/or Morgan Stanley presently hold those interests.

85. Plaintiff is informed and believes that Silver State, Saxon Mortgage, GMAC Mortgage assumed their interests in the Property despite evidence of fraud, and with knowledge that Mrs. Iverson was at all times in exclusive possession of the Property. Silver State, GMAC Mortgage, and Saxon Mortgage are therefore not bona fide encumbrancers.

86. On information and belief, Defendants Silver State, GMAC Mortgage, and Saxon Mortgage received fees, commission, compensation, and/or other profits in connection with the transfer, assignment, and/or sale of the Silver State Deeds of Trust.

87. Mrs. Iverson, who is seventy-one years of age, is suffering great distress and anxiety regarding the possibility that she and her children will be evicted from and lose her home of over forty years.

88. Plaintiff is informed and believes that Barnett, Kimberly Barnett, Odom, Hardy, Cervantes, Trusperity Acquisition Corporation, Trusperity Corporation, and the Doe Defendants perpetrated similar fraudulent schemes against numerous other unsuspecting homeowners in Southern California.

## FIRST CAUSE OF ACTION

### Fraud

(Against Defendants Barnett, Odom, Hardy, Cervantes, Trusperity Acquisition Corporation, Trusperity Corporation, and the Doe Defendants)

89. Plaintiff realleges and incorporates by reference every allegation contained in the preceding paragraphs of this complaint as though set forth herein.

90. On or about September 15, 2005, Mrs. Iverson received a visit from Barnett who informed Mrs. Iverson that he, Trusperity Corporation, and/or Trusperity Acquisition Corporation

Ex. A, pg. 28

could save Mrs. Iverson's home from foreclosure. Barnett specifically represented to Mrs. Iverson that he would help save her home from foreclosure, that he would help her with her financial difficulties, and that she would continue to own her Property at all times.

91. Mrs. Iverson is informed and believes that Barnett and Trusperity Corporation and/or Trusperity Acquisition Corporation, a broker corporation licensed by the California Department of Real Estate, were in a confidential relationship with her at all relevant times.

92. Mrs. Iverson, on information and belief, alleges that when Barnett made representations to her on September 15, 2005 about saving her home from foreclosure, helping her with her financial difficulties, and keeping her on title to the Property, he knew that these representations and promises were false.

93. Mrs. Iverson, on information and belief, alleges that Barnett, Kimberly Barnett, Odom, Hardy, Cervantes, Trusperity Acquisition Corporation, Trusperity Corporation, and the Doe Defendants had knowledge of this fraudulent scheme to defraud her of title to the Property, knowingly assisted in its commission, and shared in the proceeds of the fraudulent scheme.

94. Plaintiff, on information and belief, alleges that Barnett, Odom, Kimberly Barnett, Hardy, Cervantes, Trusperity Acquisition Corporation, Trusperity Corporation, and the Doe Defendants, agreed with each other to take title to Mrs. Iverson's home and otherwise defraud her through the "foreclosure rescue scheme" described in this complaint.

95. Mrs. Iverson, on information and belief, alleges that Odom, Kimberly Barnett, Hardy, Cervantes, Trusperity Acquisition Corporation, Trusperity Corporation, and the Doe Defendants aided and abetted Barnett in the execution of this fraudulent foreclosure rescue scheme against Mrs. Iverson, or otherwise furthered or facilitated the fraud against Mrs. Iverson.

96. The overt acts of Barnett, Kimberly Barnett, Odom, Hardy, Trusperity Acquisition Corporation, Trusperity Corporation, and the Doe Defendants constituted their conspiracy to execute the foreclosure rescue scheme against Plaintiff.

97. Mrs. Iverson, on information and belief, alleges that Barnett, Kimberly Barnett, Odom, Hardy, Cervantes, Trusperity Acquisition Corporation, Trusperity Corporation, and the Doe Defendants intended to defraud Mrs. Iverson of title to the Property and intended to have her rely on

these false representations, omissions, and promises so that she unknowingly would transfer her interest in the Property to Barnett. On information and belief, Plaintiff alleges that these defendants sought to have Barnett obtain title to the Property fraudulently so that they could encumber it and strip its equity for their own benefit.

98. At the time Barnett made false representations, omissions, and promises to Mrs. Iverson, she was unaware of the omissions and of the falsity of his misrepresentations and promises and believed them to be true.

99. Given the defendants' representations that they were professionals and experts in real estate and foreclosures and her own lack of sophistication, vulnerability, and inexperience in real estate, Mrs. Iverson reasonably, justifiably, and detrimentally relied on the defendants' misrepresentations. She reasonably, justifiably, and detrimentally relied on the false and fraudulent representations, omissions, and promises when she signed documents Barnett and Cervantes provided her.

100. Mrs. Iverson signed certain documents in reliance on Barnett's representations that the subject documents confirmed her participation in a "program" that would enable her to save her home. After learning about Barnett's fraud, Mrs. Iverson reviewed documents that purportedly bear her signature. She does not understand the nature of all these documents and does not, in all instances, recognize the signature on such documents as her own. Mrs. Iverson is informed and believes that these defendants may have forged her name on certain of the documents that purport to bear her signature, including handwritten instructions purportedly authorizing Trilogy Escrow to disburse proceeds of the "sale" to Barnett.

101. The actions of Barnett, Odom, Hardy, Cervantes, Kimberly Barnett, Trusperity Acquisition Corporation, Trusperity Corporation, and the Doe Defendants were willful, wanton,

103. WHEREFORE, Mrs. Iverson respectfully requests judgment as follows:

(a) General and specific damages in the amount of at least $250,000;

(b) Punitive damages in an amount according to proof;

(c) Attorney's fees and costs in an amount according to proof; and

(d) Such other relief as this Court deems proper and just.

Ex. A, pg. 30

**SECOND CAUSE OF ACTION**

**Violation of Civ. Code § 1695 et seq. (Home Equity Sales Contract Act)**

(Against Defendants Barnett, Trusperity Acquisition Corporation, Trusperity Corporation, and the Doe Defendants)

104. Mrs. Iverson realleges and incorporates by reference every allegation contained in the preceding paragraphs of this complaint as though set forth herein.

105. At all relevant times, Mrs. Iverson was a "Property Owner" as defined in Civil Code § 1695.1(f) and an "Equity Seller" as defined in Civil Code § 1695.1(c).

106. Barnett, Trusperity Acquisition Corporation, Trusperity Corporation, and the Doe Defendants were "Equity Purchasers" as defined in Civil Code § 1695.1(a). Barnett, Trusperity Acquisition Corporation, Trusperity Corporation, and the Doe Defendants were agents and "Representatives" of each other as defined by Civil Code § 1695.15(b). Defendants acted on behalf of each other to solicit, induce, or cause Mrs. Iverson to transfer title of the Property to Barnett.

107. Defendants failed to provide Mrs. Iverson with a written contract that complied with the requirements of Civil Code §§ 1695.2, 1695.3, or 1695.5. Failure to provide such a contract is a violation of Civil Code § 1695.6(a).

108. Furthermore, defendants violated Civil Code § 1695.6 by:

(a) Executing a conveyance of Mrs. Iverson's interest in the Property prior to expiration of the cancellation period;

(b) Making untrue statements about the rights and obligations of the parties and the nature of the documents signed; and

(c) Encumbering the Property prior to expiration of the cancellation period.

109. In addition, defendants violated Civil Code § 1695.13 by entering into an agreement that took unconscionable advantage of Mrs. Iverson, an elderly widow and unsophisticated property owner.

110. As a direct and proximate result of the aforementioned acts and omissions, Mrs. Iverson has suffered actual damages in an amount to be proven at trial, but in an amount at least equal to the value of the lost equity in her home.

Ex A pg 31

111. WHEREFORE, Mrs. Iverson respectfully requests judgment as follows:

(a) Rescission and cancellation of all Grant Deeds and Deeds of Trust subsequent to September 2005 pursuant to Civil Code § 1695.7;

(b) Actual and exemplary damages pursuant to Civil Code § 1695.7, in an amount to be proven at trial, but which include her lost equity as her actual damages and at least three times her lost equity as exemplary damages;

(c) Reasonable attorney's fees and costs pursuant to Civil Code § 1695.7; and

(d) Such further relief as this Court may deem proper and just.

**THIRD CAUSE OF ACTION**

**Violation of Civ. Code § 2945 et seq. (Mortgage Foreclosure Consultant Act)**

(Against Defendants Barnett, Trusperity Acquisition Corporation, Trusperity Corporation, and the Doe Defendants)

112. Mrs. Iverson realleges and incorporates by reference every allegation contained in the preceding paragraphs of this complaint as though set forth herein.

113. At all relevant times, Mrs. Iverson was the "Property Owner" as defined in Civil Code § 2945.1(g).

114. Barnett, Trusperity Acquisition Corporation, Trusperity Corporation, and the Doe Defendants were and are "Foreclosure Consultants" as defined in Civil Code § 2945.1(a).

115. Defendants solicited, offered, and represented to Mrs. Iverson that they would save her home, which was in foreclosure at the time.

116. Defendants violated Civil Code § 2945.3 by failing to provide Mrs. Iverson with a written contract disclosing the exact nature of their services as foreclosure consultants and the total amount and terms of their compensation.

117. Defendants further failed to provide Mrs. Iverson with the notices required by Civil Code § 2945.3(b)-(c).

118. Defendants violated Civil Code § 2945.4(a) by falsely and fraudulently receiving compensation without fully performing the services that they represented that they would perform.

119. Defendants violated Civil Code § 2945.4(e) by acquiring an interest in the Property.

Ex. A, pg. 30

120. Additionally, in violation of California Civil Code § 2945.4(g), defendants induced or attempted to induce Mrs. Iverson to enter into an agreement that did not comply in all respects with Civil Code §§ 2945.2 and 2945.3.

121. As a result, Mrs. Iverson was damaged in an amount to be proven at trial, but which is an amount at least equal to her lost equity in the Property.

122. WHEREFORE, Mrs. Iverson respectfully requests judgment as follows:

(a) Actual damages pursuant to Civil Code § 2945.6(a);

(b) Pursuant to Civil Code § 2945.6(a), exemplary damages in an amount equivalent to at least three times the compensation received by defendants for violations of Civil Code § 2945.4(a), (e), and (g);

(c) Attorney's fees and costs pursuant to Civil Code § 2945.6(a);

(d) A declaration that the Barnett Grant Deed and all Grant Deeds and Deeds of Trust on the Property executed after September 1, 2005 are void, null, and canceled pursuant to Civil Code sections 2945.4(c) and 2945.6(a); and

(e) Such other relief as this Court may deem proper and just.

## FOURTH CAUSE OF ACTION

**Violation of Bus. & Prof. Code § 17200 et seq.**

(Against All Defendants Except Executive Trustee Services and the Unknown Defendants)

123. Mrs. Iverson realleges and incorporates by reference every allegation contained in the preceding paragraphs of this complaint as though set forth herein.

124. Defendants' conduct as described in this complaint constitutes unlawful, unfair or fraudulent business practices in violation of Business and Professions Code § 17200.

125. Barnett, Kimberly Barnett, Odom, Cervantes, Hardy, Trusperity Acquisition Corporation, Trusperity Corporation, and the Doe Defendants engaged in unlawful, unfair and/or fraudulent business practices, including:

(a) Targeting Mrs. Iverson and other vulnerable homeowners facing foreclosure;

(b) Deceiving Mrs. Iverson and other homeowners into signing documents that purportedly forfeited rightful ownership of their homes;

Ex. A, pg. 33

(c) Forging Mrs. Iverson's signature on documents;

(d) Misrepresenting the nature of documents presented to Mrs. Iverson for signing;

(e) Converting the funds secured by the Property for their own use;

(f) Signing or notarizing documents that they knew or should have known were fraudulent;

(g) Failing to comply with the requirements of California Civil Code § 1695 et seq. and § 2945 et seq. in entering into transactions with property owners in foreclosure; and/or

(h) Failing to comply with the requirements of Welfare & Institutions Code § 15610.30.

126. Defendants Anchor Mortgage and Silver State engaged in unlawful, unfair and/or fraudulent business practices, including:

(a) Receiving monies, including fees, commissions, and/or other compensation, in connection with the approval of fraudulent loans;

(b) Executing deeds of trusts and funding loans that they knew or should have known to be fraudulent;

(c) Failing to comply with the requirements of Welfare & Institutions Code § 15610.30;

(d) Failing to properly investigate or underwrite loans and/or the borrowers' purported interest in the real property used to secure the loan;

(e) Placing large encumbrances on the Property and allowing equity to be liquidated from the Property without ever inquiring as to the rights or interests of Mrs. Iverson, who at all times was in exclusive, open and notorious possession of the Property; and

(f) Selling loans that they knew or should have known to be fraudulent.

127. Defendants Fidelity National and Trilogy Escrow engaged in unlawful, unfair and/or fraudulent business practices, including:

Ex A pg 34

(a) Providing escrow services for a sales transaction that they knew or should have known was fraudulent;

(b) Relying on handwritten escrow instructions that they knew or should have known were fraudulent;

(c) Receiving monies, including fees, commissions, and/or other compensation, in connection with the "sale" of the Property to Barnett;

(d) Dispersing to Barnett, the purported "Buyer" of the Property, approximately $138,000 in proceeds that they knew or should have known rightfully belonged to Mrs. Iverson; and

(e) Failing to comply with the requirements of Financial Code § 17414(a)(1) by knowingly or recklessly participating in, and/or or aiding or abetting Barnett and his coconspirators' participation in, the fraud perpetrated against Mrs. Iverson by disbursing monies rightfully belonging to her to Barnett.

128. Defendants GMAC Mortgage and Saxon Mortgage engaged in unlawful, unfair and/or fraudulent business practices, including:

(a) Failing to properly investigate and underwrite loans that they purchased or otherwise acquired;

(b) Failing to properly investigate Barnett's purported interest and Mrs. Iverson's interest in the Property prior to acquiring his loan(s) with Silver State despite the fact that record title was inconsistent with possession of the Property;

(c) Asserting an encumbrance that they knew or should have known was fraudulent against the Property;

(d) Attempting to profit from loans that they knew or should have known were fraudulent and came at the expense of a vulnerable and elderly homeowner; and

(e) Failing to comply with the requirements of Welfare & Institutions Code § 15610.30.

129. As a direct and proximate result of these practices and/or acts, defendants have received and collected monies to which they are not entitled.

130. As a direct and proximate result of these practices and/or acts, Mrs. Iverson not only faces the loss of hundreds of thousands of dollars in equity, but at the age of seventy-one, also faces, along with her children, the possibility of eviction from her home.

131. WHEREFORE, Mrs. Iverson respectfully requests judgment as follows:

(a) Restitution;

(b) Disgorgement of any profits earned as a result of the defendants' conduct;

(c) A declaration that the Barnett Grant Deed and all Grant Deeds and Deeds of Trust on the Property executed after September 1, 2005 are null, void, and canceled;

(d) Reasonable attorney's fees and costs; and

(e) Such other relief as this Court may deem proper and just.

**FIFTH CAUSE OF ACTION**

**Violation of Welf. & Inst. Code § 15610.30 (Financial Elder Abuse)**

(Against All Defendants Except Executive Trustee Services and the Unknown Defendants)

132. Mrs. Iverson realleges and incorporates by reference every allegation contained in the preceding paragraphs of this complaint as though set forth herein.

133. Mrs. Iverson is an "elder" within the meaning of Welfare and Institutions Code § 15610.27 because at all relevant times herein mentioned, she was sixty-seven years of age or older.

134. Barnett, Kimberly Barnett, Odom, Cervantes, Hardy, Trusperity Acquisition Corporation, Trusperity Corporation, and the Doe Defendants violated Welfare and Institutions Code § 15610.30 by taking, appropriating, and retaining through fraud Mrs. Iverson's Property and hundreds of thousands of dollars of equity.

135. Defendants Trilogy Escrow and Fidelity National assisted Barnett and his coconspirators in taking Mrs. Iverson's Property and appropriating monies derived from it by providing escrow services to Barnett and disbursing to Barnett, the purported "Buyer" of the

Ex. A pg. 36

Property, $138,000 that rightfully belonged to Mrs. Iverson. Trilogy Escrow and Fidelity National knew or should have known that Mrs. Iverson had an interest in the Property and its equity and that Barnett was acting fraudulently.

136. Defendants Anchor Mortgage and Silver State assisted Barnett, Odom, and their coconspirators in taking, appropriating, and retaining Mrs. Iverson's Property and monies derived from it by encumbering the Property with fraudulent loans. Anchor Mortgage and Silver State knew or should have known that Mrs. Iverson had an interest in the Property and its equity and that Barnett was acting fraudulently.

137. Defendants GMAC Mortgage and Saxon Mortgage violated Welfare and Institutions Code § 15610.30 by asserting fraudulent encumbrances against the Property, effectively retaining Mrs. Iverson's home and equity, when they knew or should have known that such conduct was likely to harm Mrs. Iverson. GMAC Mortgage and Saxon Mortgage knew or should have known that the loans they acquired were fraudulent, that Mrs. Iverson had an interest in the Property and its equity, and that Barnett was acting fraudulently.

138. Defendants' conduct was a substantial factor in the harm suffered by Mrs. Iverson, including the loss of her and her children's home and valuable equity, upon which she was relying as a source of income in her elder years, and has caused Mrs. Iverson extreme emotional distress.

139. The conduct of Defendants Barnett, Kimberly Barnett, Odom, Hardy, Trusperity Acquisition Corporation, Trusperity Corporation, and the Doe Defendants was willful, malicious, and/or oppressive and constitutes an intentional scheme to defraud Mrs. Iverson and take advantage of her advanced age.

140. The conduct of Defendants Anchor Mortgage, Trilogy Escrow, GMAC Mortgage, Silver State, Saxon Mortgage, and the Doe Defendants was reckless and/or negligent.

141. WHEREFORE, Mrs. Iverson respectfully requests judgment as follows:

(a) Actual damages, pursuant to Welfare & Institutions Code § 15657.5(a), (b) and Civil Code § 3345;

(b) Punitive damages against Defendants Barnett, Odom, Cervantes, Hardy, Trusperity Acquisition Corporation, and Trusperity Corporation, pursuant to

Ex. A, pg. 37

Welfare & Institutions Code § 15657.5(b) and Civil Code § 3294;

(c) Reasonable attorney's fees and costs, pursuant to Welfare & Institutions Code § 15757.5(a); and

(d) Such other relief as this Court may deem proper and just.

**SIXTH CAUSE OF ACTION**

**Negligence**

(Against Defendants Anchor Mortgage, GMAC Mortgage, Saxon Mortgage, Silver State, and the Doe Defendants)

142. Mrs. Iverson realleges and incorporates by reference every allegation contained in the preceding paragraphs of this complaint as though set forth herein.

143. Defendants owed a duty of due care to Mrs. Iverson. Because she had been living continuously, openly and exclusively on the Property since 1967, defendants also had a duty to inquire as to Mrs. Iverson's claims to the Property before funding or acquiring any loan secured by the Property.

144. The mortgage funded by Anchor Mortgage affected Mrs. Iverson by, among other things, encumbering her Property in the amount of $266,500 and facilitating the fraudulent sale of the Property from her to Barnett.

145. Silver State allowed the fraud against Mrs. Iverson to continue by encumbering her Property in the amount of $380,000 and facilitating the fraudulent sale of the Property from Barnett to Odom.

146. On information and belief, Plaintiff alleges that the Silver State Deeds of Trust were bought by, transferred to, or otherwise assumed by GMAC Mortgage, and Saxon Mortgage or Morgan Stanley.

147. Defendants' failure to investigate and underwrite properly the mortgages they funded or acquired and their failure to investigate properly Barnett's and Odom's purported interests in the Property foreseeably harmed Mrs. Iverson, the true owner and person in possession of the Property.

148. Defendants' conduct, including their "look the other way" business practices and failure to inquire as to Mrs. Iverson's claims to the Property, is blameworthy, especially given Mrs.

Ex. A pg. 38

Iverson's advanced age.

149. Defendants Anchor Mortgage and Silver State breached their duty of due care toward Mrs. Iverson by failing to conduct reasonable due diligence in investigating the claims of the person in possession of the Property and in underwriting the mortgage loans they funded. They further breached this duty by encumbering Mrs. Iverson's Property with loans that they knew or should have known to be based on a fraudulent transaction.

150. Defendants GMAC Mortgage and Saxon Mortgage breached their duty of due care toward Mrs. Iverson by failing to conduct reasonable due diligence in investigating the claims of the person in possession of the Property prior to acquiring the loans and in investigating the underwriting done on the mortgages they acquired. They further breached this duty by asserting encumbrances against Mrs. Iverson's Property that they knew or should have known to be based on a fraudulent transaction.

151. Given Mrs. Iverson's open and continuous possession of the Property, Barnett's notorious criminal history of mortgage fraud, the low "sales" price of the Property to Barnett, the number of questionable real estate transactions between Odom and Barnett, and the history and nature of the transfers of title to the Property, Defendants Anchor Mortgage, Saxon Mortgage, GMAC Mortgage, and Silver State knew or should have known that Mrs. Iverson had a legal right to ownership of the Property, that Barnett and Odom were acting fraudulently, and that their own actions in encumbering or asserting an encumbrance against Mrs. Iverson's home without proper investigation would harm Mrs. Iverson.

152. Defendants Anchor Mortgage, Silver State, GMAC Mortgage, Saxon Mortgage, and the Doe Defendants further breached their duty to Mrs. Iverson by failing to properly inquire about Mrs. Iverson claims to the Property.

153. Defendants' breach of their duties is the direct, legal and proximate cause of Mrs. Iverson's injuries. Mrs. Iverson's damages are certain. She is elderly, financially unsophisticated, and vulnerable, and has suffered not only the loss of equity in her home, but also has suffered, and continues to suffer, extreme emotional distress about the possibility of being forced to leave her home. This severe emotional distress has included, without limitation, worry, anxiety,

embarrassment, anger and other forms of mental and emotional anguish.

154. Defendants' conduct as alleged herein also constitutes negligence per se:

a. Defendants' conduct as alleged in paragraphs 133-41 violated Welfare and Institutions Code § 15610.30.

b. Section 15600 *et seq.* of the Welfare and Institutions Code was specifically enacted to protect elderly individuals from financial abuse, neglect, or abandonment.

c. Mrs. Iverson is among the class of persons that section 15600 *et seq.* was designed to protect and for whose protection this statutory scheme was adopted. Mrs. Iverson's injuries also are of the kind that section 15600 *et seq.* was intended to prevent.

d. Defendants' violation of Welfare and Institutions Code § 15610.30 is the direct, legal and proximate cause of Mrs. Iverson's injuries.

155. WHEREFORE, Mrs. Iverson respectfully requests judgment as follows:

(a) Compensatory damages in an amount according to proof; and

(b) Such other relief as this Court may deem proper and just.

## SEVENTH CAUSE OF ACTION

### Cancellation of Deeds

(Against Defendants Barnett, Odom, Anchor Mortgage, GMAC, Saxon Mortgage, Fidelity National, Executive Trustee Services, the Unknown Defendants, and the Doe Defendants)

156. Mrs. Iverson realleges and incorporates by reference every allegation contained in the preceding paragraphs of this complaint as though set forth herein.

157. Mrs. Iverson never intended to transfer title to the Property by her purported signature on the Barnett Grant Deed (see Exhibit A), and did not knowingly sign any grant deed. The signature purporting to be hers on the Barnett Grant Deed is fraudulent because it was forged, because it was procured without her consent or authorization, or because Mrs. Iverson was unaware of the nature of the document she was signing.

158. Because of the fraud in the execution, the Barnett Grant Deed is null and void. As a

Ex. A, pg. 70

result, all subsequent grant deeds and all subsequent deeds of trust, including the Odom Grant Deed (see Exhibit C), the Anchor Deed of Trust (see Exhibit B), and the Silver State Deeds of Trust (see Exhibits D and E), are similarly null and void.

159. Because Mrs. Iverson never intended to transfer title to the Property, there was no effective delivery of the Barnett Grant Deed and it is null and void. As a result, all subsequent grant deeds and all subsequent deeds of trust, including the Odom Grant Deed (see Exhibit C), the Anchor Deed of Trust (see Exhibit B), and the Silver State Deeds of Trust (see Exhibits D and E), are similarly null and void.

160. Because Barnett violated Civil Code § 1695 et seq. and § 2945 et seq., the Barnett Grant Deed also is null and void. As a result, all subsequent grant deeds and all subsequent deeds of trust, including the Odom Grant Deed (see Exhibit C), the Anchor Deed of Trust (see Exhibit B), and the Silver State Deeds of Trust (see Exhibits D and E), are similarly null and void.

161. Alternatively, the Barnett Grant Deed, the Odom Grant Deed, the Anchor Deed of Trust, and the Silver State Deeds of Trust were procured by fraud in the inducement and are voidable. At all relevant times, defendants were on notice of Mrs. Iverson's legal and equitable rights in, and claims to, the Property due, among other things, to her continuous, open, notorious and exclusive possession of the Property. No defendant was a bona fide purchaser or encumbrancer of the Property.

162. Mrs. Iverson is under a reasonable apprehension that the Barnett Grant Deed, all subsequent grant deeds, and all subsequent deeds of trust will cause her serious loss if left outstanding. As a result, she seeks to cancel the Barnett Grant Deed and all subsequent grant deeds and encumbrances.

163. Wherefore, Mrs. Iverson respectfully requests judgment as follows:

(a) A declaration that the Barnett Grant Deed and all Grant Deeds and Deeds of Trust (including the Odom Grant Deed, the Anchor Deed of Trust, and the Silver State Deeds of Trust) on the Property executed after September 1, 2005 are null, void, and canceled;

Ex. A, pg. 41

(b) An order and judgment that the Barnett Grant Deed, Odom Grant Deed, the Anchor Deed of Trust, the Silver State Deeds of Trust, and other Deeds of Trust recorded after September 1, 2005 are canceled and that such instruments must be delivered to the Clerk of Court for cancellation; and

(c) Such further relief as this Court may deem just and proper.

**EIGHTH CAUSE OF ACTION**

**Quiet Title**

(Against Defendants Barnett, Odom, Anchor Mortgage, GMAC, Saxon Mortgage, Fidelity National, Executive Trustee Services, the Unknown Defendants, and the Doe Defendants)

164. Mrs. Iverson realleges and incorporates by reference every allegation contained in the preceding paragraphs of this complaint as though set forth herein.

165. Mrs. Iverson is the sole title owner of the Property located at 1116 N. Chester Ave., Compton, California 90221.

166. Defendants each claim (or have claimed) to hold an interest in the Property by virtue of the Barnett Grant Deed, the Odom Grant Deed, the Anchor Deed of Trust, and/or the Silver State Deeds of Trust.

167. As set forth above, defendants have no lawful right, title, estate, lien or interest whatsoever in the Property, and never had any lawful right, title, estate, lien, or interest whatsoever in the Property, due to the fact that the Barnett Grant Deed was fraudulently executed or procured by fraud, the fact that there was no effective delivery of the Barnett Grant Deed, and the violations of Civil Code § 1695 et seq. and § 2945 et seq.

168. No defendant is a bona fide purchaser of the Property or a bona fide encumbrancer of it. Nor did any defendant have proper authority to transfer title to the Property. A modicum of due diligence would have discovered, among other things, that Mrs. Iverson was at all times living exclusively at the Property; that at all relevant times she claimed to be the rightful owner of the Property; that Barnett was a notorious real estate scammer with numerous felony convictions; that Odom and Barnett, who were both employees of Trusperity Acquisition Corporation, had engaged

Ex. A, pg. 43

in numerous questionable real estate transactions; and that the purported transfer of the Property to Barnett from Mrs. Iverson was fraudulent.

169. Mrs. Iverson seeks to Quiet Title against all defendants in this action who claim any interest in the Property on or after September 1, 2005.

170. Wherefore, Mrs. Iverson respectfully requests judgment as follows:

(a) A judicial declaration quieting title in favor of her;

(b) An order and judgment that defendants and their assigns and successors in interest have no right, title, estate, lien or interest whatsoever in the Property, and never had any right, title, estate, lien or interest whatsoever in the Property, and that as of September 1, 2005, and from that day forward, Mrs. Iverson is and was the sole owner in fee simple absolute of the Property; and

(c) Such further relief as this Court may deem just and proper.

Dated: February 16, 2010

PUBLIC COUNSEL

By: [signature]
Banafsheh Amirzadeh
Attorneys for Plaintiff
BILLIE MARIE IVERSON

Ex. A, pg. 43

**VERIFICATION**

I, Billie Marie Iverson, declare:

1. I am the Plaintiff in this action.

2. I have read the foregoing **FIRST AMENDED COMPLAINT** and know the contents thereof. I am informed and believe, and on that ground allege, that the matters stated in the foregoing document are true.

3. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 16, 2010 at Los Angeles, CA.

Billie M. Iverson

Billie Marie Iverson

Ex. A, pg. 44

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am over the age of 18, and not a party to the within action. My business address is: 610 S. Ardmore Avenue, Los Angeles, California 90005. On February 16, 2010, I served the foregoing documents described as:

**FIRST AMENDED VERIFIED COMPLAINT**

on the interested parties in this action, by placing a true copy thereof in a sealed envelope addressed as follows:

**PLEASE SEE ATTACHED SERVICE LIST**

_X_ [BY FIRST CLASS MAIL] I personally placed such envelope with postage fully prepaid for collection and mailing on the above-referenced date following the ordinary business practices of this office. I am readily familiar with our office's practice for collection and processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, correspondence, including said envelope, would be deposited with the United States Postal Service at Los Angeles, California on the above-referenced date.

____ [BY OVERNIGHT MAIL] I mailed such envelope by overnight delivery on the above-referenced date following the ordinary business practices of this office. I am readily familiar with our office's practice for collection and processing of correspondence for overnight mailing.

____ [BY PERSONAL SERVICE] I caused the attached document(s) to be hand delivered to the office(s) of the addressee(s) set forth above.

____ [BY FAX] I personally placed the above referenced documents to be personally served through facsimile to the firms with a facsimile number indicated on the service list.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 16, 2010, at Los Angeles, California.

Maria Cabadas

Ex. A pg. 45

**IVERSON v. ODOM, et al.,**
**Case No. BC412377**
**SERVICE LIST**

Andrea Hardy
2913 Eckleson Street
Lakewood, CA 90712

Louis M. Benowitz, Esq.
The Law Office of Louis M. Benowitz
9454 Wilshire Blvd, PH Suite 34
Beverly Hills, CA 90212
***Counsel for Angel A. Cervantes***

Katharine A. Miller, Esq.
King Cheng & Miller LLP
117 E. Colorado Blvd., Suite 260
Pasadena, CA 91105
***Counsel for Anchor Mortgage***

Jennifer Slater, Esq.
Garrett & Tully, P.C.
225 South Lake Avenue, Suite 1400
Pasadena, CA 91101
***Counsel for GMAC Mortgage, LLC***

David M. Chute, Esq.
Wolfe & Wyman LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614-5979
***Counsel for Executive Trustee Services, LLC***

Robin P. Wright, Esq.
Wright Finlay & Zak
4665 MacArthur Court, Suite 280
Newport Beach CA 92660
***Counsel for Saxon Mortgage Services, Inc.***

Christopher E. Deal, Esq.
Gregory C. Hill, Esq.
17911 Von Karman Avenue, Suite 300
Irvine, CA 92614-6253
***Counsel for Fidelity National Title Company***

Tom R. Normandin, Esq.
Kristin F. Godeke, Esq.
Prenovost, Normandin, Bergh & Dawe
2122 North Broadway, Suite 200
Santa Ana, CA 92706-2614
***Counsel for Trilogy Escrow, Inc.***

Trusperity Corporation & Trusperity Acquisition Corporation
c/o Kimberly Barnett, President
6203 E. Cliffway Drive
Orange, CA 92869

Silver State Financial Services, Inc.
Gina Malaskovitz, Legal Department
Authorized to Accept Service
1349 Galleria Dr., Suite 200
Henderson, NV 89014

Ex. A, pg. 76